**Kevin C. Brague, OSB No. 050428**
kevin@braguelawfirm.com
THE BRAGUE LAW FIRM
1205 NW 25th Avenue
Portland, Oregon 97210
t: 503.922.2243
f: 844.714.6450

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **KAMRAN LEHMAN**, an individual,<br><br>                    Plaintiff,<br><br>        v.<br><br>**PACIFIC UNIVERSITY**, an Oregon domestic non-profit entity,<br><br>                    Defendant. | Case No. 3:17-cv-186<br><br>**COMPLAINT**<br>Breach of Contract; Breach of Good Faith & Fair Dealing; Section 504; and Negligence<br><br>DEMAND FOR JURY TRIAL |

## PARTIES

1.

At all material times, Plaintiff Kamran Lehman ("Lehman"), was a resident and domiciliary of Washington County, State of Oregon.

2.

At all material times, Defendant Pacific University ("Pacific") was and is an Oregon not-for-profit entity doing business throughout Oregon and headquartered in Washington County, State of Oregon.

Page 1 – **COMPLAINT**

## JURISDICTION

### 3.

Federal Court jurisdiction exists pursuant to the 20 USC § 794 et seq. and 42 USC §§ 12181 et seq. Supplemental jurisdiction arises under 28 USC § 1367 for all common law and State of Oregon claims.

## VENUE

### 4.

Venue is proper in the U.S. District Court of Oregon, Portland Division because all acts alleged herein occurred in Washington County, State of Oregon.

## STATEMENT OF THE CASE

### 5.

Pacific provides undergraduate and graduate degree programs including speech language pathology. Pacific's College of Education offers a Master of Science degree in Speech Language Pathology ("SLP program").

### 6.

Lehman was admitted into Pacific's SLP program for the Fall term of 2014 and began his coursework that term.

### 7.

In 2015 Lehman reached out to Dr. Lemoncello about depression and trouble concentrating on studies.

### 8.

On Wednesday July 29, 2015 during finals week, Lehman was invited and attended a party at a faculty member's house. While intoxicated from the provided alcoholic beverages,

Page 2 – **COMPLAINT**

Lehman makes a statement about not wanting to live on this planet anymore.  As a result of this statement, an emergency protocol was initiated which resulted in two other students visiting Lehman at his apartment until the police arrived.

9.

The next day an emergency meeting was held by the Dean of Student Affairs and the faculty of the SLP program and Lehman's disabilities and issues were disclosed and discussed. Lehman was not informed of this meeting and was not a participant.  Subsequently, Dr. Amanda Stead contacts Lehman and pressures him to take a leave of absence and not go to his clinical practicum at Kiwanis Camp that summer.

10.

On Friday, July 31, 2015 Dr. Lemoncello met with Lehman and determines that Lehman was fit to attend his clinical practicum.

11.

At the Kiwanis Camp, Lehman is supervised by a 19 year-old camp counselor with little to no formal education past high school.  The counselor takes issue with Kamran and the adult down syndrome camper for who he is given responsibility.  On the last night of camp, Assistant Professor Clinical Education, Caitlin McDonnell met with the 19 year-old counselor and then terminated Lehman's clinical practicum.  Professor McDonnell attributes and discloses to others that Lehman's ADHD and depression were the reasons for the termination of his clinical practicum.

12.

Lehman then meets with Dr. Marty Fischer, Director of the SLP program.  Dr. Fischer refuses to allow anyone to accompany Lehman at this meeting.  During this meeting, Dr. Fischer

Page 3 – **COMPLAINT**

reiterates and pushes forward the narrative that Lehman's perceived issues at Camp Kiwanis were directly related to his disability of ADHD and depression.  Lehman complained about Caitlin McDonnell's use and disclosure of his disability in terminating his clinical practicum.  In response, Dr. Fischer encouraged Lehman to take a medical leave of absence. Dr. Fischer threatened Lehman about proceeding forward with his complaints about Caitlin McDonnell and her violation of his privacy.

13.

Subsequent to his abrupt termination from his clinical practicum based on his disabilities, Lehman reports the FERPA violation to Will Perkins, Dean of Student Affairs.

14.

Lehman then begins the appeal process for receiving a "no pass" grade in his clinical practicum.  During the appeal process new and contradictory information was brought forward by Pacific University that was never previously disclosed to Kamran.  Ultimately, Kamran is placed on a remediation plan that is largely unrelated to Lehman's performance at Camp Kiwanis and non passing grade for his clinical practicum.

15.

Dr. Gayatri Ram is placed over Lehman for his remediation plan and during their first meeting she states that she would wash her hands of Lehman – i.e. dismiss him from the University.

16.

Subsequently, Lehman does not receive a clinical placement at the beginning of the next semester.

The Brague Law Firm
1205 NW 25th Avenue
Portland, Oregon  97210
503.922.2243

17.

During this time Pacific withholds academic advising from Lehman by not replacing his previous academic advisor (who had retired).  Pacific, in its design to dismiss Lehman, then assigns Dr. Ram as his academic advisor.  This was done in spite of a student advocacy representative promising Lehman an impartial advisor.

18.

In accordance with the SLP program objectives, Lehman did a poster presentation at an OSHA conference based on research done as a Graduate Assistant with Professor Stead. During this conference and presentation Caitlin McDonnell and Dr. Amanda Stead intimidated, embarrassed, and harassed Lehman.  The following Monday, Dr. Stead met with Lehman and apologized for her behavior.

19.

On December 7, 2015 while Kamran is in his clinical practicum, Dr. Ram emails and removes him from his second clinical practicum.  Lehman did not receive any notice, warning, basis, reason, meeting, or documentation about the removal.  Dr. Ram's decision to remove Lehman from his clinical practicum effectively dismisses him from the SLP program and Pacific University.

20.

Pacific never addresses Lehman's FERPA complaint.

21.

Lehman then appeals the decisions made by Pacific to dismiss from the SLP program and university.  Pacific's decision was overturned by its own University Standards & Appeals Board which found that Pacific violated its own policies.

Page 5 – **COMPLAINT**

**FIRST CLAIM FOR RELIEF**

(Breach of Contract)

22.

Plaintiff realleges and incorporates by reference paragraphs 1 through 21 above.

23.

In 2014, Pacific offered admission to Kamran for its SLP program which he accepted and began taking coursework to complete the degree requirements.

24.

The contract between Pacific and Lehman consists of admission or enrollment agreements, Pacific's 2014 Graduate Catalog, Student Handbook, and Pacific's letters, bulletins, circulars, and regulations which were made available to Lehman including but not limited to the following statements and terms:

a.    learning experiences designed to support [Lehman's] progress.

b.    innovative clinical education opportunities

c.    Graduate students will be assigned to a faculty member for academic advising. Students will have the opportunity to meet with their academic advisor on an individual basis throughout their graduate program. In addition, group advising sessions will be scheduled to review various policies, procedures and topics that are pertinent to the graduate cohort.

d.    The clinical program is designed to give students multiple opportunities for practicum in various clinical settings in the community. Clinical practica are infused throughout the program each semester and provide opportunities for students to integrate and apply academic learning at progressively higher levels of

Page 6 – **COMPLAINT**

performance and independence. Clinical sites include the Pacific University College of Education Early Learning Community (ELC), Early Intervention and Early Childhood Special Education sites, k-12 public schools, hospitals, rehabilitation centers, skilled nursing facilities, and other clinical sites serving individuals with speech-language needs. The clinical program, semester by semester, can be found in the Appendix.

e.  Advising for the clinical part of the program will begin during the Graduate Student Orientation. Group advising sessions will be scheduled throughout the graduate program to inform students of policies and procedures relating to clinical practicum. Students will also have the opportunity to schedule individual appointments with the clinical faculty throughout the graduate program.

f.  The Dean of the College of Education will consider on an individual basis a recommendation for dismissal if a student fails to sustain satisfactory progress toward completion of the degree or because two or more substandard grades exist on the student's transcript at any time, or if any of the following occur:

Indications of poor academic performance

Insufficient progress in meeting knowledge and skills competencies

Failure to comply with School of Communication Sciences and Disorders and the College of Education rules or procedures

Unprofessional conduct, unethical conduct, or illegal conduct

Evidence of behavior that may hinder professional competence and interpersonal or professional relations

Page 7 – **COMPLAINT**

Ordinarily, a student will have received warnings that his or her work is less than satisfactory before dismissal. However, a student may, for adequate cause, be dismissed without previous warning. Per university policy, a student can appeal the decision.

g.    A student may appeal a decision of the College of Education related to academic standing by submitting a letter to the Dean within ten business days of the decision. The appeal will be heard before a committee of five members convened by the Dean. The committee will consist of a member of the Education Consortium, a faculty member from the Faculty of the Professional Schools, a faculty member from the College of Education outside of the student's own program, a faculty member selected by the student, and another student. Any appeal of this committee's decision must be referred to the University Standards and Appeals Board."

h.    The Communication Sciences and Disorders faculty will evaluate each student's academic performance, practicum skills, and professional behaviors demonstrated in university classes and clinical practica.  These evaluations will occur at the halfway point and at the end of each semester. Students will receive written notification of the results of these evaluations. Evaluations will adhere to standards set forth in the Pacific University Graduate Professions Catalog and the American Speech-Language-Hearing Association Standards for Certification regarding knowledge and skills acquisition.

A student who is not performing adequately will receive notification through written and verbal notification and individual advisement. In addition, the overall

Page 8 – **COMPLAINT**

academic and clinical progress of each student is reviewed at the midpoint and at the end of each grading period by Communication Sciences and Disorders faculty. Semester grades of less than "B-", that is "C+", "C", "C-", "D", "F", and "NP", are considered substandard.

i.     Graduate students in the School of Communication Sciences and Disorders must achieve a level of mastery established by faculty for designated ASHA knowledge and skill competencies. Mastery is achieved when markers of competency are reached in related coursework and clinical activities.

When a student does not demonstrate competency in a given area, the method for resolving the missed competency will be at the Instructor's discretion. Methods for resolving a competency may include, but are not limited to:

Re-taking an entire exam or a portion of an exam

Re-doing an assignment

Completing an alternative assignment

Re-taking an entire course

Remedial activities intended to address unmet markers do not alter the student's grade for an assignment. Remedial activities are conducted only to demonstrate competencies that are required for ASHA professional certification.

When a student does not successfully complete an activity that is tied to a marker, the course instructor will create a remediation plan. The plan will be specified using the Contract for Remediation of ASHA Competencies located in the Appendix.

The Brague Law Firm
1205 NW 25th Avenue
Portland, Oregon  97210
503.922.2243

j.      The School of Communication Sciences and Disorders and the College of

Education expects that its instructors will design and teach courses that

appropriately challenge students. From the beginning of the course, instructors

will clearly communicate expectations regarding standards of performance and

will explain how grades will be determined and assigned. It is expected that

students will receive feedback concerning their status during the course and that

all graded work will be returned promptly.

Instructors in the School of Communication Sciences and Disorders will model

and communicate expectations for exemplary professional behavior. Instructors

will warn students when their academic performance or professional behavior is

less than satisfactory as soon as that becomes apparent to the instructor.

Assignments and tests will be designed to allow a determination of students'

conceptual understanding of course material and their ability to apply what they

have learned in an authentic manner in an educational setting. Instructors are

responsible for judging the quality and accuracy of student work and assigning

grades.

Instructors are expected to possess personal attributes of honesty, dedication,

responsibility, and strong ethical values. They are expected to create a learning

environment that is challenging, positive, and rewarding and that honors cultural

differences and diversity.

Instructors are expected to treat students and peers with respect and adhere to all

Pacific University rules and guidelines, including those concerning smoking,

parking, and alcohol use on campus.

Page 10 – **COMPLAINT**

k.      [Students, staff, and faculty] may not reveal the personal health information of

other persons. Removal of an individual's name does not constitute proper

confidentiality or protection of health information. Inclusion of any information

that may identify a person, such as: name, date of birth, age, gender, race, or

diagnosis, evaluation date, type of intervention, or photographs still allow the

reader to recognize or identify a specific person, and is a violation of HIPAA.

l.      [Students, staff, and faculty] may not report private (protected) academic

information of another student, including but not limited to: course, exam, or

assignment grades; narrative evaluations; adverse academic actions; professional

behavior checklists or contracts; or fieldwork performance evaluations. These

constitute a violation of FERPA.

m.     Students should be aware of the University's policy of Privacy Rights of students

which states that: "No one outside the institution shall have access to nor will the

institution disclose any information from any students' education records without

the written consent of students." The document Pacific University Institutional

Procedures Regarding the Family Educational Rights and Privacy Act (FERPA)

can be found in the Appendix.

Educational records refer to:

a) the records and information contained in each student's file and

b) anecdotal information that a faculty or staff member may possess

regarding a student's academic standing or performance which may

include, but is not limited to, a student's knowledge, skills and attributes.

The Brague Law Firm
1205 NW 25th Avenue
Portland, Oregon  97210
503.922.2243

Note: Refer to section Academic Standing for further clarification regarding what

constitutes a student's academic performance.

In accordance with University policy, the School may not release any records or

information regarding a student's academic performance without the expressed

written consent of the student. For example, unless written permission is provided

by a student, faculty and staff members may not provide recommendations for

scholarships, consult with fieldwork educators, or provide written or verbal

employment references. Therefore, it is necessary for the School to have student's

written consent to release such information. Each student will be requested to

sign, as appropriate, the form titled Student Consent For Release of Information.

The consent will remain in effect until written notification is received rescinding

the request.

n.    Pacific University's Rights and Responsibilities policy seeks to maintain

conditions favorable to learning. Students have the right to pursue an education

free from discrimination based on gender, religion, marital status, age, sexual

orientation or handicap. Students have the responsibility to conduct themselves,

both individually and in groups, in a manner which promotes an atmosphere

conducive to teaching, studying and learning. This policy is described in detail in

Pacific University Professional Programs Course Catalog or the Pacific

University Arts and Sciences Course Catalog.

o.    Services and accommodations are available to students covered under the

Americans with Disabilities Act. The university requires appropriate

documentation of a disability in order to enable students to meet academic

The Brague Law Firm
1205 NW 25th Avenue
Portland, Oregon  97210
503.922.2243

standard. Students who require accommodations in any course must contact the Director of Learning Support Services for Students with Disabilities who will meet with the student, review the documentation of the disability and discuss the services Pacific offers and any accommodations required for specific courses. It is extremely important that students begin this process at the beginning of the semester. Students are encouraged to work with faculty proactively in developing strategies for accommodation. This policy is described in the Pacific University Professional Programs Course Catalog and the Pacific University Arts and Sciences Course Catalog.

p.      Students are supervised by faculty members and speech-language pathologists in the community who hold the Certificate of Clinical Competence (CCC) from ASHA and who are licensed by the state. Clinical practicum hours must be supervised by individuals who hold a current CCC in the area in which the observation and practicum hours are being obtained. The Director of Clinical Education will verify supervisor's current ASHA Certification with the Council on Clinical Certification. Clinical faculty from the university will make regular visits to each clinical site to provide support for both the student and the site supervisor. Clinical faculty will have the opportunity to communicate with site supervisors and students on a regular basis, via email, phone and site visits. Site supervisors will be informed that the nature and amount of clinical supervision must be adjusted to the experience and ability of the student, according to ASHA guidelines. Direct supervision must be in real time and must be no less than 25% of the student's total contact with each client and must take place periodically

Page 13 – **COMPLAINT**

throughout the practicum. (Standard V-E) Clinical faculty and students will have the opportunity to schedule individualized appointments on a regular basis throughout each semester.

q.      Students will earn a minimum 375 clock hours in the areas of prevention, assessment and intervention of clients across the life span through completion of clinical practica throughout the graduate program. Students must be registered for the practicum in order to obtain clock hours for that experience. Students must receive a course grade of Pass in order to complete the practicum course satisfactorily, earn clock hours, and meet clinical skill competencies. If a student does not earn a Pass in the practicum course, they may not be able to progress in the program and a remediation plan will be developed.

r.      Clinical practicum and the clinical externship will be graded on a Pass/No Pass basis. During each semester that a student is involved in clinical practica or externship, a midterm and final evaluation will be completed by their site clinical supervisor. Evaluations include competencies in the areas of:

          Evaluation skills

          Intervention skills

          Preparedness, interaction, and personal qualities

The Evaluation of Student in Clinical Practicum and the Evaluation of Clinical Externship can be found in the Appendix.

s.      Graduate student clinicians will have the opportunity to evaluate and provide speech-language intervention to clients of all ages who present with a wide variety of communication challenges. A student who is just beginning their

Page 14 – **COMPLAINT**

clinical experience is expected to require more supervision and assistance than one with more experience. The scoring rubrics for clinical practicum and the clinical externship with guidelines for student and supervisor can be found in the Appendix.

t.      Students who are experiencing difficulty acquiring and/or demonstrating satisfactory clinical skills will have the opportunity to have a structured and individualized clinical remediation program with intensive input from clinical faculty. The process for the remediation is as follows:

1.      The need for clinical remediation will be identified by the scheduled midterm evaluation week. Student clinicians whose clinical performance is below expectations will be identified for remediation as soon as possible. An exception may occur if there is decreased performance after the midterm evaluation. Remediation will be recommended for any student earning below the required scores for their clinical level.

2.      A meeting will be scheduled with the student clinician and supervising faculty member and/or Director of Clinical Education to review the midterm evaluation and to discuss the need for a remediation plan. The site supervisor may also be involved in the meeting. The remediation procedure will be reviewed.

The remediation procedure is as follows:

1.      The student, supervisory faculty member and/or Director of Clinical Education will set up a remediation planning meeting within one week of

The Brague Law Firm
1205 NW 25th Avenue
Portland, Oregon  97210
503.922.2243

the previous meeting. The site supervisor may also attend the meeting. The

student may invite another student or faculty member to the meeting.

2.      A formal remediation plan will be developed to address each area

of concern and will include specific goals and objectives and an indication of the

means and methods to be used. A timeline for meeting the goals and objectives

will be included in the plan. The plan will be signed and dated by the student,

supervisory faculty member and the Director of Clinical Education.

3.      The supervisory faculty member or the Director of Clinical

Education and the student will meet on a regular basis as set up on the

remediation plan. The remediation meeting may take place at the clinic site, the

University or electronically. The purpose of the remediation meeting is to

facilitate and monitor progress toward the stated goals and objectives.

4.      If a student receives an overall final grade of No Pass for the

clinical practicum, the student will not receive clock hours for the practicum and

may not progress to the next level of clinical practicum. The remediation plan will

include expectations and timelines for progression to the next clinical level.

25.

Pacific breached its contract with Lehman in the following particulars:

a.      By failing to provide learning experiences designed to support Lehman's

progress.

b.      By failing to provide innovative clinical education opportunities.

Page 16 – **COMPLAINT**

c.      By failing to provide an assigned faculty member for academic advising, and failing to provide opportunities to meet with their academic advisor on an individual basis throughout their graduate program.

d.      By failing to provide opportunities to integrate and apply academic learning at progressively higher levels of performance and independence.

e.      By failing to provide Group advising sessions on policies and procedures relating to clinical practicum.

f.      By failing to follow its dismissal and appeal policy and procedures.

g.      By failing to follow its academic performance review policy and procedures.

h.      By failing to provide, advise, or define competency markers in clinical practicum.

i.      By failing to follow its policies and procedures for remediation.

j.      By failing to provide instructors and faculty to supervise, design, teach, and communicate clear expectations for the clinical practicum.

k.      By delegating its responsibility to supervise, design, teach, and communicate clear expectations for the clinical practicum to an unqualified teenager.

l.      By failing to provide instructors who model and communicate expectations for exemplary professional behavior.

m.      By failing to provide instructors who will warn students when their academic performance or professional behavior is less than satisfactory as soon as that becomes apparent to the instructor.

n.      By failing to provide instructors who possess personal attributes of honesty, dedication, responsibility, and strong ethical values, who create a learning

Page 17 – **COMPLAINT**

environment that is challenging, positive, and rewarding and that honors cultural differences and diversity.

o.     By failing to provide instructors who treat students and peers with respect and adhere to all Pacific University rules and guidelines.

p.     By violating its policies concerning the disclosure of personal health (name, date of birth, age, gender, race or diagnosis, evaluation date, and type of intervention), and private information including but not limited to: course, exam, or assignment grades; narrative evaluations; adverse academic actions; professional behavior checklists or contracts; or fieldwork performance evaluations.

q.     By violating its policy of Privacy Rights of students which states that: "No one outside the institution shall have access to nor will the institution disclose any information from any students' education records without the written consent of students."

r.     By disclosing records and information regarding a student's academic performance without the expres consent of the student.

s.     By failing to maintain conditions favorable to learning.

t.     By failing to provide an education environment free from discrimination based on gender, religion, marital status, age, sexual orientation or handicap.

u.     By failing to provide faculty members and speech-language pathologists in the community who hold the Certificate of Clinical Competence (CCC) from ASHA and who are licensed by the state.

The Brague Law Firm
1205 NW 25th Avenue
Portland, Oregon  97210
503.922.2243

v.    By failing to provide clinical practicum supervision by individuals who hold a current CCC in the area in which the observation and practicum hours are being obtained.

w.    By failing to provide qualified, competent, trained, and educated site supervisors.

x.    By failing to evaluate clinical externships in accordance with Pacific's policy on competencies.

y.    By failing to provide an opportunity to have structured and individualized clinical remediation program with intensive input from clinical faculty.

z.    By failing to provide Pacific's process and procedure for remediation.

26.

Lehman has performed all conditions precedent to his contract with Pacific.

27.

As a natural and necessary result of Pacific's breach of contract, Lehman is damaged by unnecessarily incurring debt in the approximate amount of $80,000.00, loss of other educational opportunities, loss of future income, and loss of the benefit of the bargain in an amount to be proved at trial.

**SECOND CLAIM FOR RELIEF**

(Breach of Good Faith and Fair Dealing)

28.

Plaintiff realleges and incorporates by reference paragraphs 1 through 27 above.

29.

Pacific breached its promises, representations, and inducements to Lehman and dismissed him from the University without good cause or in good faith and fair dealing.

The Brague Law Firm
1205 NW 25th Avenue
Portland, Oregon  97210
503.922.2243

30.

As a result, Lehman is naturally and necessarily damaged in an amount to be proved at trial.

### THIRD CLAIM FOR RELIEF

(Section 504)

31.

Lehman realleges and incorporates by reference paragraphs 1 through 30, above.

32.

Lehman is a person with disabilities, and his disabilities substantially limit major life activities including, but not limited to, employment and education.

33.

Pacific was aware of Lehman's disabilities and used that knowledge to discriminate and terminate Lehman from its SLP program.

34.

Pacific receives Federal monies by and through the Federal Student Financial Aid program and, upon information and belief, other Federal money through grants.

35.

As a result of Pacific's deliberate indifference toward Lehman, he suffered embarrassment, humiliation, anxiety, worry, and stress and ultimately, loss of his graduate education, all to his economic and noneconomic damages in an amount to be proven at trial.

36.

Lehman is entitled to an award of his attorney fees and costs pursuant to 29 USC § 794a.

The Brague Law Firm
1205 NW 25th Avenue
Portland, Oregon  97210
503.922.2243

## FOURTH CLAIM FOR RELIEF

(Retaliation)

37.

Lehman realleges and incorporates by reference paragraphs 1 through 36 above.

38.

Lehman engaged in the protected activity of complaining about violations of his privacy under FERPA and HIPAA.

39.

Pacific subjected Lehman to adverse actions because of his complaints by taking the following actions:

a.     Threatening Lehman to not complain;

b.     Ignoring his complaint about privacy violations;

c.     Implementing a remediation plan that was unrelated to Lehman's performance in his clinical practicum;

d.     Withholding a clinical placement at the beginning of the next term.

e.     Disparaging Lehman to his site supervisor;

f.     Withholding academic advising, then assigning an academic advisor who was hostile to Lehman.

40.

As a result of Pacific's actions against Lehman, he suffered embarrassment, humiliation, anxiety, and stress, and loss of his graduate education as well as lost opportunities all to his economic and non-economic damages in an amount to be proven at trial.

The Brague Law Firm
1205 NW 25th Avenue
Portland, Oregon  97210
503.922.2243

## FIFTH CLAIM FOR RELIEF

### (Negligence)

41.

Lehman realleges and incorporates by reference paragraphs 1 through 40 above.

42.

Pacific owes a special duty to Lehman as professionals and educators in acting on Lehman's behalf in directing and controlling his education and implementing his approved accommodations.

43.

Pacific breached its special duty to Lehman, as alleged above and incorporated herein, by failing to exercise reasonable care under its own policies and contractual obligations in the performance and delegation of its official duties, and, by failing to do so, proximately and foreseeably caused Lehman's injuries, damages, and losses.

44.

As a result of Pacific's failure to act with due care on behalf of Lehman, Lehman suffered anxiety, stress, worry, and fear all to his economic and non-economic damages in an amount to be proven at trial.


WHEREFORE, Lehman prays for the following relief:

1.      On his First Claim for Relief, for actual, consequential, and foreseeable damages to be proven at trial and as determined by a jury.

2.      On his Second Claim for Relief, for actual, consequential, and foreseeable damages to be proven at trial and as determined by a jury.

Page 22 – **COMPLAINT**

3.      On his Third Claim for Relief, for actual and proximately caused foreseeable economic and noneconomic damages to be proven at trial and as determined by a jury.

4.      On his Fourth Claim for Relief, for actual and proximately caused foreseeable economic and noneconomic damages to be proven at trial and as determined by a jury.

5.      On his Fifth Claim for Relief, for actual and proximately caused foreseeable economic and noneconomic damages to be proven at trial and as determined by a jury.

6.      For Lehman's attorney fees pursuant to 29 USC § 794a.

7.      For Lehman's costs and disbursements herein.


DATED this 2nd day of February, 2017.

THE BRAGUE LAW FIRM


By /s/  Kevin C. Brague
        Kevin C. Brague, OSB No. 050428
        kevin@braguelawfirm.com
        1205 NW 25th Avenue
        Portland, Oregon 97210
        t: 503.922.2243
        f: 844.714.6450
        Attorney for Plaintiff